```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA
                                     :
          - v -                                    11 Cr. 1086 (PGG)
                                     :
GLEN BARFIELD,
                                     :
          Defendant.
- - - - - - - - - - - - - - - - - - x
```

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

```
                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the United States
                                   of America

DANIEL B. TEHRANI
Assistant United States Attorney
     - Of Counsel -
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA
                                     :
        - v -                                  11 Cr. 1086 (PGG)
                                     :
GLEN BARFIELD,
                                     :
            Defendant.
- - - - - - - - - - - - - - - - - - x
```

## SENTENCING MEMORANDUM OF THE UNITED STATES

The defendant is scheduled to be sentenced in this matter on February 6, 2013, at 2:30 pm. The Government respectfully submits this memorandum in advance of the sentencing, and in response to defendant's sentencing memorandum dated January 23, 2013 ("Def. Mem."), in which the defendant asks the Court to impose either a below-Guidelines sentence of imprisonment of 60 months or a bottom-of-the-Guidelines sentence of imprisonment of 210 months. (Def. Mem. at 1.) The Government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 210 to 262 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**Background**

**A.    The Information**

On December 16, 2011, the United States Attorney for the Southern District of New York filed a three-count Information charging the defendant with two counts of transporting and distributing files containing child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(1), (a)(2)(B) and (b)(1), and one count of possessing files containing child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2).  On August 7, 2012, the defendant appeared before Magistrate Judge Michael H. Dolinger and entered a guilty plea, pursuant to a plea agreement (the "Plea Agreement"), to the three counts of the Information.

**B.    The Offense**

In November 2010, a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), engaged in an operation to identify individuals sharing child pornography over peer-to-peer networks, and established a connection to a computer that was making child pornography available over such a network.  (United States Probation Office's Presentence Investigation Report ("PSR") ¶¶ 10-11.) Subsequent investigation revealed that the computer that had shared the images belonged to the defendant. (Id. ¶ 12.)  Among

2

the files that the agent downloaded from the defendant's computer were:

- An image titled "Boys in action-013-Preteen Pedo Boy.jpg," depicting two pre-pubescent boys, one naked and the other wearing just a T-shirt, lying on a bed together and exposing their genitals.
- An image titled "Boys in actions-020-Preteen Pedo Boy.jpg," depicting two pre-pubescent boys on a bed, with one of the boys performing oral sex on the other.
- An image titled "abdr12-3.jpg," depicting a pre-pubescent boy engaged in anal intercourse with an adult male. (Id. ¶ 11(a)-(c).)

Law enforcement thereafter executed a search warrant at the defendant's residence and seized, among other things, a computer. (Id. ¶ 12.) Forensic examination of the computer revealed images and videos of:

- Three-year-old girls being raped in bathtubs;
- Two-to-three-year-old boys being molested by their fathers;
- An eight-year old being sodomized;
- Eight-to-ten-year old boys engaging in anal sex;
- An approximately seven-year-old boy performing oral sex on an adult male; and
- A naked two-year-old girl.

3

(Id. ¶ 18.)  In total, law enforcement identified several thousand images of child pornography.  (Id. ¶ 19.)

The forensic examination also revealed that the defendant had searched for images of children aged one to six, and that he had boasted of his own sexual conduct with minors. (Id. ¶ 17.)  In particular, in an online chat with another individual, the defendant stated that he was dating a 16-year-old, and that he had taken a picture of the child after he had had sex with him. (Id.)  The defendant then sent a picture of the boy to his chat partner.  (Id.)  Finally, law enforcement retrieved pictures from Barfield's computer of his trip to India.  (Dr. Shoshanna Must's December 26, 2012 Adult Psychosexual Risk Assessment ("Must Report") at 4.)  Those pictures depicted young boys urinating and exposing their genitalia.  (Id.)  Although the defendant denied sexual thoughts or contact during that trip, he previously admitted to having sexual thoughts while on trips to Asia.  (Id.)

After his arrest, the defendant agreed to speak with law enforcement and admitted that he had been looking at child pornography for approximately seven years, and that he particularly searched for boys aged eight to 12.  (PSR ¶ 14.) He also admitted that he had video chatted over the internet with a 16-year-old boy.  (Id. ¶ 15.)  During those video chats, the defendant and the boy masturbated together, and the

4

defendant showed the boy child pornography by holding a mirror up to the computer and reflecting the images onto his webcam. (Id.)  This was the boy's first exposure to child pornography. (Id.)

**C.    The Defendant's Criminal History**

The defendant was convicted on or about June 7, 1999, in Criminal Court, Harris County, Texas, of Prostitution, which resulted in a sentence of 15 days' imprisonment. (Id. ¶ 40.)  As a result, the defendant has zero criminal history points, which places him in Criminal History Category I.

**D.    The Guidelines Calculation**

The offenses carry a maximum prison sentence of 50 years' (600 months') imprisonment.  Pursuant to the Plea Agreement, the parties agreed that the total adjusted offense level attributable to the defendant's conduct is 37.  The United States Probation Office (the "Probation Office") confirms a total offense level of 37 and a Criminal History Category of I, yielding a Guidelines range of 210 to 262 months' imprisonment. (Id. ¶ 92.)  The Probation Office recommends a 96-month term of imprisonment to be followed by a five-year term of supervised release.  (Id. at 25.)

**Discussion**

**A.   The Applicable Law**

      The United States Sentencing Guidelines still provide strong guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).  Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  Booker, 543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  Gall v. United States, 128 S. Ct. 586, 596 (2007).

      After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," id.

§ 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7). See Gall, 128 S. Ct. at 596 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B.   A Guidelines Sentence Is Appropriate**

A sentence within the Guidelines range of 210 to 262 months' imprisonment is appropriate considering the factors set forth in Section 3553(a). In particular, the nature and circumstances of the offense are serious and a significant prison sentence is necessary to promote respect for the law, reflect the seriousness of the offense, provide a just sentence, and afford adequate deterrence to others. See 18 U.S.C. § 3553(a)(1) & (2)(A)-(B). The Supreme Court has pointed out that "[c]hild pornography harms and debases the most defenseless of

7

our citizens." United States v. Williams, 553 U.S. 285, 307 (2008). In particular -- and as underscored by the numerous victim impact statements submitted in this case -- the "distribution of child pornography is 'intrinsically related to the sexual abuse of children' because, inter alia, 'the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their participation.'" United States v. Aumais, 656 F.3d 147, 152 (2d Cir. 2011) (quoting United States v. Ferber, 458 U.S. 747 (1982)). "Because the child's actions are reduced to a recording, the pornography may haunt [the child] in future years, long after the original misdeed took place." Id. (internal quotation marks omitted) (quoting United States v. Ferber, 458 U.S. at 759); see also United States v. Sherman, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy."); United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001) (noting that children pictured "suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret") (citations omitted).

      Moreover, the possession of child pornography fosters a market for child abuse and the dissemination of child pornography. See, e.g., United States v. Gouse, No. 10-5015,

2012 WL 1233005, at *2 (2d Cir. Apr. 13, 2012) (summary order) (affirming 120-month sentence for child pornography receipt, distribution, and possession as substantively reasonable where district court had "observed that, contrary to Gouse's contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life") (internal quotation marks omitted); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and "'creates a market'" for child abuse.") (quoting United States v. Goff, 501 F.3d 250, 259-60 (3d Cir. 2007))); United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007) ("Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded — both consumed himself and disseminated to others.  The greater the customer demand for child pornography, the more that will be produced."). The Second Circuit has recognized that sharing child pornography with others is likely to expand that market yet further.  See United States v. Johnson, 221 F.3d 83, 98 (2d Cir. 2000) ("Such dissemination of child pornography is likely to expand the market for it and thus to cause more harm than mere possession.").

Here, Barfield possessed several thousand images containing child pornography. (PSR ¶ 19.) Barfield's collection included photographs of young children engaged in various sex acts, including oral and anal sex, with each other and with adults. (Id. ¶ 11.) Moreover, the defendant was neither a passive possessor nor distributor of child pornography; he actively disseminated images of child pornography to at least one minor while video chatting with the minor and engaging in mutual masturbation. (Id. ¶ 15.) This was the minor's first exposure to child pornography. (Id.) Thus, in this single disturbing incident Barfield: (a) continued to victimize the children in the pictures he distributed; (b) exposed a minor to child pornography; (c) engaged a minor in sexual activity that was captured by a video camera and transmitted to Barfield; and (d) created a market for the rape and abuse of more children. Nor were Barfield's chats with this particular minor an isolated incident. The defendant admitted to chatting with 20 boys, aged 14 to 16. (PSR ¶ 66.) And although the defendant now denies ever having physical contact with minors, id. ¶ 66, the defendant boasted in an online chat that he had a 16-year-old boyfriend and had taken a picture of the boy after he had had sex with him, id. ¶ 17. Barfield then sent the picture to his chat partner. (Id.) That Barfield would take pictures of naked young boys is also not isolated.

10

As noted above, retrieved photographs of Barfield's trip to India showed young boys urinating and exposing their genitalia. (Must Report, at 4.)

Thus, not only did the defendant possess child pornography and distribute particularly graphic child pornography over a peer-to-peer network, but he actively distributed child pornography to adults and minors, engaged minors in sexual conduct via video chat, sent post-coital photographs of his purported minor boyfriend, and took pictures of naked boys while traveling abroad. This conduct not only directly harmed the individual children with whom he was in contact, but, as documented in the victim impact statements, the defendant's conduct has seriously and permanently harmed the numerous child victims depicted in the photographs as well as their families. Accordingly, a significant sentence is warranted to, among other things, reflect the seriousness of the offense and afford adequate deterrence to others.

C.  **The Defendant's Arguments Do Not Justify a Below-Guidelines Sentence**

Relying principally on the Second Circuit's decision in United v. Dorvee, 616 F.3d 174 (2d Cir. 2010), the defendant argues a significant variance (150 months from the bottom of the Guidelines range) is warranted. Nothing in Dorvee supports such a variance for the defendant.

First, as noted by the defendant, the Dorvee court was particularly concerned with sentencing guidelines that result in Guidelines ranges near or exceeding the statutory maximum (as in Dorvee). See United States v. Dorvee, 616 F.3d at 186. The Second Circuit noted that "[b]y concentrating all offenders at or near the statutory maximum, § 2G2.2 eviscerates the fundamental statutory requirement in § 3553(a) that district courts consider 'the nature and circumstances of the offense and the history and characteristics of the defendant,'" and prevents courts from ensuring that dissimilarly situated defendants are not punished similarly. Id. at 187.

The defendant argues that this concern applies to him because his Guidelines sentencing range "is 210 to 262 months, while at the same time his statutory maximum term of imprisonment is only 240 months." (Def. Mem. at 12.) Of course, as set forth in the Plea Agreement and the PSR, the defendant's statutory maximum term of imprisonment is 600 months, not 240 months. Thus, the statutory maximum is more than double the high end of the Guidelines range, alleviating one of the concerns of the Second Circuit in Dorvee. See United States v. Forbes, 465 F. App'x 78, 80 (2d Cir. 2012) (summary order) ("Such a concern was apparent in Dorvee where the defendant's Guidelines range of 262 to 327 months' imprisonment well exceeded the 20-year statutory maximum for the crimes of

12

conviction. Here, Forbes's Guidelines range of 78 to 97 months' imprisonment is well below the 10-year statutory maximum. . . .") (citation omitted); United States v. Aumais, 656 F.3d at 157 (distinguishing Dorvee where sentence was "well short of the statutory maximum"); United States v. Ryan, No. 10-577-cr, 2011 WL 263170, at *3 (2d Cir. Jan. 28, 2011) (summary order) (noting that, among other things, "[t]he case before us is distinguishable [from Dorvee] in many ways. We are faced with a sentence which is nowhere near the statutory maximum, and is actually nearer the five-year statutory minimum"); United States v. Swackhammer, No. 09-3546-cr, 2010 WL 4848137, at *1 (2d Cir. Nov. 30, 2010) (summary order) ("Dorvee is clearly distinguishable from this case because Appellant's sentence was not near or exceeding the statutory maximum.").

   Moreover, and perhaps more importantly, the Second Circuit in Dorvee, was "troubled by the district court's apparent assumption that Dorvee was likely to actually sexually assault a child, a view unsupported by the record evidence . . . ." 616 F.3d at 183. Here, as noted above, the defendant actively distributed child pornography to a minor victim, exposing the child to child pornography for the first time, while at same time engaging in remote sexual activity with the child over video chat. The defendant also boasted of having a 16-year-old boyfriend, sent pictures of the child, and was found

13

with pictures of naked boys taken while the defendant was in India. Thus, Barfield is not similarly situated to other defendants whose conduct is "inherent to the crime of conviction." Id. at 186. Nor is there a concern that the statutory maximum term of imprisonment concentrates Barfield's sentencing range with other dissimilarly situated defendants -- namely other first time offenders who merely possessed or passively distributed child pornography or repeat offenders who, like Barfield, engaged in direct conduct with minor victims.

Accordingly, a downward variance is not warranted.

## Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a Guidelines sentence of imprisonment in this case.

Dated:   New York, New York
         January 30, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                                    By: _____
                                        Daniel B. Tehrani
                                        Assistant United States Attorney
                                        Tel.: (212) 637-2455